UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DAWN R. KLIMEK

    Plaintiff,

    v.                                   Case No. 2:17-cv-37-JVB-PRC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Dawn R. Klimek seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court affirms the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that she became disabled on February 1, 2010. (R. at 190.) Plaintiff most recently worked in a factory, but has not worked since 2010. (R. at 41.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from two severe conditions. (R. at 16.) However, the ALJ concluded that, in between her alleged onset date and her date last insured ("DLI") of September 30, 2012 ("the relevant period"), she could have performed past relevant work as a hand packager. (R. at 25.) The ALJ also found that she could perform other jobs that existed in significant numbers. (R. at 26.) Therefore, the ALJ denied her benefits. (R. at 29.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

1

B.  **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if it is such "that a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

C.  **Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

D.  **Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, Plaintiff argues that the ALJ improperly discounted the opinions of treating physicians and supported her step-three conclusions with only a "perfunctory analysis." These errors, Plaintiff

claims, corrupted the ALJ's Residual Functional Capacity ("RFC") analysis at step four.

**(1)     The Commissioner Did Not Waive Her Arguments**

In her reply, Plaintiff argues that the Commissioner waived several of her arguments for want of citation to legal authority. To support this contention, Plaintiff cites *Downie v. Swiss Grand Hotel*, 1995 U.S. App. LEXIS 32295 (7th Cir. 1995) (reported in table case format at 67 F.3d 301). In that case, the plaintiff challenged an unfavorable ruling, but cited no supporting evidence in the record. *Id.* Rather, she simply declared that a "thorough examination of the facts as alleged" would prove her case. *Id.* The court declined this invitation to do plaintiff's research for her and held that she waived her arguments by failing to properly support them. *Id.*

*Downie* does not apply here. For starters, *Downie* addressed the burdens on the challenger of the adverse judgment, which, here, is Plaintiff. Moreover, the Commissioner sufficiently cited the record in support of her arguments, even if some arguments could have been developed better.

**(2)     The ALJ Properly Discounted the Opinions of Drs. Reddy and Danehy**

Drs. Reddy and Danehy provided post-DLI medical source statements in which they opined that Plaintiff suffered several disabling limitations. (R. at 718, 779, 1089.) The ALJ assigned the opinions "minimal" and "little" weight mainly because the records during the relevant period did not reflect such extreme limitations. (R. at 24–25.)

An ALJ need not accept at face value a medical opinion that "compelling evidence" contradicts. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("Not even the claimant's treating physician . . . is given such complete deference"). The ALJ may discount an opinion if

3

she "persuasively explain[s]" with "substantial evidence" why the limitations the opinion assigned "were not supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015). Here, substantial evidence supports the ALJ's persuasive explanation for discounting the treating physicians' opinions.

(a)  *The Relevant-Period Record Does Not Support Dr. Reddy's Post-DLI Opinions*

Dr. Reddy provided two post-DLI medical-source statements that assigned Plaintiff movement limitations based on her neck, back, and shoulder issues. (R. at 718–724, 1089–1096.) He opined that the limitations applied as far back as January 2012. (R. at 724, 1096.) These limitations would render Plaintiff unemployable. (R. at 78.) The ALJ questioned Dr. Reddy's familiarity with Plaintiff prior to the DLI, noting that Plaintiff's only relevant-period visits with the doctor occurred in January 2012. (R. at 24.) Furthermore, the ALJ found that Plaintiff "was reasonably responsive to treatment and followed by . . . normal clinical findings" during the relevant period. (R. at 25.) Plaintiff disputes the ALJ's findings, but substantial evidence supports the ALJ's conclusions.

In January 2012, Dr. Reddy noted that Plaintiff complained of neck pain and head titubation. (R. at 327.) She had seen many doctors up to that point, but "none of them could come up with an answer." *Id.* Her back pain, however, was "not an issue" at that time. *Id.* She had right-shoulder pain that improved in a follow-up visit almost two weeks later. (R. at 328.) Plaintiff then received an epidural steroid injection that resulted in a 90% pain reduction. (R. at 666.) Another injection two weeks later led to an 85% pain reduction. (R. at 658.) By 2013, Plaintiff returned to Dr. Reddy with improved head and hand tremors. (R. at 702.) She instead complained of a "new onset" of issues. *Id.* Moreover, her neck and head issues were rated as

"Moderate" in April 2013 and rated as "Mild" just one month later. (R. at 729, 733.) Those issues remained "Mild" in February 2014. (R. at 741.) Thus, substantial evidence supports the ALJ's assertion that Plaintiff's issues were not disabling during the relevant period.

The ALJ also pointed out that Plaintiff had only seen Dr. Reddy "in January 2012 and then not again until late 2013." (R. at 24.) Plaintiff dismisses this conclusion as "inappropriate speculation." (Pl.'s Br. at 18.) But Plaintiff points to no evidence of any visits between January 2012 and December 2013 other than a note from Dr. Reddy, dated February 2014, that Plaintiff "is seen every 1-3 months for [follow-up]." (R. at 718.) Yet, Dr. Reddy stated in the notes from the December 2013 visit that "last time I saw [Plaintiff] was more than a year ago." (R. at 702.) Plaintiff stated in a March 2013 visit with her neurologist that she had not seen Dr. Reddy in a year. (R. at 564.) In other words, the ALJ did not speculate, nor did she need to.

In summary, the ALJ provided valid reasons, supported by substantial evidence, to conclude that Plaintiff's physical impairments were not disabling during the relevant period.

(b)　　*The Relevant-Period Record Does Not Support Dr. Danehy's Post-DLI Opinion*

Dr. Danehy opined in 2014 that Plaintiff suffered several social-situation handicaps, concentration deficiencies, and decompensation episodes that applied during the relevant period. (R. at 773–77.) Had the ALJ adopted Dr. Danehy's opinion in its entirety, she would almost certainly have had to find Plaintiff disabled at step three. Instead, the ALJ discounted the opinion, finding that the relevant-period record contradicted it. Substantial evidence supports this conclusion as well.

As the ALJ noted, the relevant-period record consists mostly of findings that Plaintiff had, for example, a "[n]ormal psychiatric evaluation" and "[n]ormal interpersonal interactions

5

with appropriate affect and demeanor." (R. at 371.) By April 2013, Plaintiff's anxiety was rated as "Moderate." (R. at 534.) A month later, her anxiety dropped to "Mild." (R. at 512.) Plaintiff was given a Global Assessment of Function test in May 2013, which showed "moderate difficulty in social, occupational, or school functioning." (R. at 489.) Plaintiff did complain of memory issues in January 2013, but she was found to have "normal memory, fund of knowledge, attention/concentration and language." (R. at 593–94.) Not until October 2014 did doctors find "decreased concentration." (R. at 968.) The record contains no instances of decompensation.

Yet, Plaintiff claimed that she would "get irritated easily." (R at 255.) Specifically, she would lash out at people, including authority figures, and was "really bad about [her] way or no way." (R. at 254.) However, the ALJ reasonably questioned why these issues never manifested themselves in any of her doctors' visits. (R. at 19.) As the ALJ notes, "the evidence shows that [Plaintiff] was still able to . . . interact appropriately with care providers and at the hearing." *Id.* Dr. Reddy even described Plaintiff as "pleasant." (R. at 327.) In addition, irritability concerns did not emerge in doctors' visits until after the relevant period. (R. at 336.)

Plaintiff argues that Dr. Danehy provided the only mental status examination in the record. (Pl.'s Br. at 19.) The record contains several findings under headings entitled "Mental Status Exam," including some within Dr. Danehy's own treatment notes that indicated that Plaintiff's anxiety and depression improved throughout 2013. (R. at 684–96.) Second, this "mental status examination" to which Plaintiff refers is actually just a medical source statement. (R. at 773.) Third, Dr. Danehy wrote her opinion after relevant period, forcing the ALJ to scour the record for pre-DLI evidence to corroborate that opinion's conclusions. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). The ALJ did so and found no relevant-period support for Dr. Danehy's extreme conclusions.

6

Nevertheless, Plaintiff, citing *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), argues the ALJ must "rely on expert opinions instead of determining the significance of particular medical findings themselves." In *Moon*, the ALJ decided that "unremarkable" MRI results meant that the plaintiff's migraines were in check, a conclusion that finds no support in the medical field. *Id*. Here, however, the ALJ made no such leap of faith. The ALJ, for instance, merely compared "frequent deficiencies in concentration" with multiple instances of "normal . . . attention/concentration." (R. at 776–802.) The ALJ did not violate any *Moon* doctrine.

**(3)     The ALJ Sufficiently Handled the Remaining Medical Evidence**

Plaintiff next argues that the record contains several medical opinions that the ALJ failed to weigh. Perhaps, but Plaintiff fails to identify any opined limitations that the ALJ ignored, other than those of Drs. Reddy and Danehy, which the ALJ properly discounted. For instance, Plaintiff identifies Dr. Aalaei's physical examination and assessment of Plaintiff as an unweighed opinion. (R. at 682–83.) But all Dr. Aalaei did was note Plaintiff's current issues and what would be done about them. *Id.* Forcing the ALJ to weigh a mere recitation of Plaintiff's symptoms, none of which the ALJ ignored, would not change the outcome of the case, rendering the alleged error harmless. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013).

**(4)     The ALJ Did Not Err at Steps Three or Four**

Plaintiff's remaining arguments—that the ALJ ignored evidence during steps three and four—require an uncritical acceptance of the opinions of Drs. Reddy and Danehy. "But the ALJ need not blindly accept a treating physician's opinion—she may discount it if it is . . . contradicted by other substantial medical evidence in the record." *Henke v. Astrue*, 498 Fed.

7

Appx. 636, 639 (7th Cir. 2012). The ALJ identified enough substantial contradictory evidence to validly discount both opinions. Thus, Plaintiff's last attacks on the ALJ's decision must fail.

**E.     Conclusion**

The ALJ properly discounted the opinions of Drs. Reddy and Danehy and supported her decision with substantial evidence. Furthermore, the ALJ properly handled the medical evidence before her. Accordingly, this Court affirms the ALJ's decision

SO ORDERED on July 12, 2018

 S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE